IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FIDELITO L. JOSEPH,                      *

        Plaintiff,                       *

        v.                               *        CIVIL NO.: WDQ-13-0402

STATE OF MARYLAND, et al.,               *

        Defendants.                      *

*    *    *    *    *    *    *    *    *    *    *    *    *
MEMORANDUM OPINION

Fidelito L. Joseph, *pro se*, sued the State of Maryland and
others[1] for constitutional violations under 42 U.S.C. §§ 1983,
1985(3). ECF No. 1. Pending are three motions to dismiss for
failure to state a claim and three motions to dismiss or for
summary judgment, by various defendants. ECF Nos. 11, 26, 27,
34, 41, 42. No hearing is necessary. Local Rule 105.6 (D. Md.
2011). For the following reasons, the defendants' motions will
be granted.

---

[1] Joseph also sued: Allegany County (the "County"), the
Cumberland Police Department (the "Police Department"), and the
Allegany County Sheriff Department (the "Sheriff's Department").
ECF No. 1. Joseph also sued the following people in their
official and individual capacities: (1) Pennie Kyle, Todd
Pressman, William Rumgay, James Burt, Richard Sivic, and Jason
Merritt, police officers of various ranks (the "police
defendants"); (2) Michael Twigg, the Allegany County State's
Attorney; and (3) Wade Sibley, Deputy Sheriff. *See id.*; ECF No.
8 at 2.

I. Background[2]

On September 29, 2010, police officers made "a routine traffic stop" of a car in which Joseph was a passenger.[3] ECF No. 1 ¶¶ 2, 24. Joseph, who is African-American and a resident of New York State, was not issued a citation,[4] but police "illegally" searched the car during the stop using a dog, which apparently detected drugs.[5] *See id.* ¶¶ 5, 8, 12, 15. Joseph was arrested and taken to the Cumberland Police station "where he was held down forcibly[,] stripped down of his clothing," and subjected to a cavity search which "caus[ed] him serious physical injury." *Id.* ¶¶ 7, 17. He was charged with, *inter alia*, possession with intent to distribute narcotics. *Id.* ¶ 8.

---

[2] For the motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] Joseph alleges that the stop was "illegal" and "bogus." ECF No. 1 ¶¶ 15, 24.

[4] Joseph alleges that the driver also did not receive a citation. ECF No. 1 ¶ 24.

[5] In an affidavit supporting Kyle's motion for summary judgment, he averred that a digital scale and white power were recovered. ECF No. 34-2 at 2. He also averred that a field test of the powder was positive for cocaine. *Id.*

On November 10, 2010, Joseph pled guilty to similar charges in West Virginia. *Id.* ¶ 9. He served 20 months of a one to five year sentence. *See id.* On the day he was to be released from the West Virginia prison, "the State of Maryland illegally detained [and] extradited [him] by apprehension."[6] *See id.* ¶ 10. He was transported to Allegany County Detention Center (the "Detention Center") and held from September 11, 2012 until October 16, 2012, when he was released on bond. *Id.* ¶¶ 10, 13.

On October 5, 2012, while at the Detention Center, "a legal issue . . . occurred at the law library," which resulted in Joseph's placement on "23[ hour] cell restriction" and "deni[al] [of his] access to the law library for two weeks."[7] *See id.* ¶ 11. The restrictions prevented Joseph from fully preparing for an October 16, 2012 hearing in the Allegany County Circuit Court.[8] *See id.* ¶¶ 11, 12. Despite these restrictions, however,

---

[6] Joseph alleges that Maryland "failed to extradite him within the 180 day speedy trial period," during his imprisonment in West Virginia. ECF No. 1 ¶ 10.

[7] During the incident, the law librarian allegedly was "belligerent, disorderly, combative, discriminatory [and] unprofessional" because of her "prejudice" against African-Americans like Joseph. ECF No. 1 ¶ 12. Joseph also alleges that the Detention Center had no African-American employees. *See id.*

[8] Joseph alleges that criminal defendants in the Detention Center "are only allowed one week of legal research into their criminal matters prior to their Court dates and trial dates," which also increased his difficulty in "prov[ing] his [innocence] before a court of law." *See* ECF No. 1 ¶ 11.

Joseph was able to file "several motions to dismiss his charges based on the legality" of the traffic stop, "the statute of limitations for speedy trial," and the State's failure to prosecute. *See id.* ¶ 14. On October 31, 2012, the charges against Joseph were dismissed. *Id.* ¶ 16.

Joseph alleges that, in carrying out these "unlawful acts, defendants were prejudice[d], bias[ed], and motivated at least in part, by the fact that plaintiff was an African American not from the State of Maryland." *Id.* ¶ 19. He also alleges that the defendants' acts caused him "various physical injuries, fear[,] embarrassment[,] humiliation, emotional distress, lost consortium, and pain [and] suffering." *Id.* ¶ 20.

On January 4, 2013, in the United States District Court for the District of Columbia, Joseph sued the defendants, who allegedly "are members of the State of Maryland[,] Allegany County Police [Department], and Allegany County Sheriff Department ([the Detention Center]) who were employed at the time of said incident." *Id.* ¶ 6. He brought two claims under § 1983, asserting that the defendants: (1) used excessive force against him during the body cavity search, in violation of the Eighth and Fourteenth Amendments (count one); and (2) "refus[ed] him a quick and speedy trial" by "failing to allow him to attend his pretrial hearings," in violation of the Fifth, Sixth,

4

Eighth, and Fourteenth Amendments and the Interstate Agreement on Detainers Act[9] (count two). *Id.* ¶ 23. He also brought a § 1985(3) claim that the defendants' "conduct was the product of a conspiracy designed to punish plaintiff for exercising his Fourth Amendment right to complain" about the body cavity search and the traffic stop,[10] in violation of the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, Fourteenth, and Fifteenth Amendments (count three). *See id.* ¶ 24. The complaint seeks compensatory and punitive damages, attorneys' fees and costs, and "[s]uch other . . . relief as this court may deem just and proper, including injunctive and declaratory relief." *Id.* at 8.

On January 17, 2013, the case was transferred to this Court, because venue was improper in the District of Columbia. ECF No. 3. On June 24, 2013, the State of Maryland, Twigg, and the Sheriff's Department moved to dismiss for failure to state a claim and lack of jurisdiction. ECF No. 11. On July 16, 2013, Joseph opposed the motion. ECF No. 22. On August 12, 2013, the

---

[9] 18 U.S.C. app. 2 § 1 *et seq.* (1970).

[10] Joseph alleges that this conspiracy:

"designed to punish plaintiff for exercising his Fourth Amendment right to complain about the illegal cavity search that was the product of the illegal traffic stop. Where neither the plaintiff (a passenger) nor the driver of the automobile was cited for a traffic violation, which sustains a continued pattern of practice of conduct as established through each and every paragraph listed herein." *See* ECF No. 1 ¶ 24.

5

County and Sibley moved separately to dismiss for failure to state a claim. ECF Nos. 26, 27.

On August 29, 2013, Kyle, Merritt, and Sivic moved to dismiss or for summary judgment. ECF No. 34. On September 23, 2013, Joseph opposed this motion. ECF No. 38. On October 12, 2013, the Police Department moved to dismiss, ECF No. 41, and Burt, Pressman, and Rumgay moved to dismiss or for summary judgment.[11] ECF No. 42.

II. Analysis

   A. Legal Standards

      1. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

---

[11] The docket does not reflect that Joseph was mailed a Rule 12/56 letter after the filing of the County's and Sibley's motions to dismiss to notify him of the pending motions. However, on September 3, 2013, he was mailed a Rule 12/56 letter after the August 29, 2013 filing of the motion to dismiss or for summary judgment. ECF No. 35. Joseph was also mailed two Rule 12/56 letters on October 15, 2013, after the filing of the motions to dismiss on October 12, 2013. ECF Nos. 43, 44.

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

## 2. Summary Judgment[12]

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[13] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in his favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from

---

[12] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Joseph has not offered any evidence in opposition to the motions for summary judgment.

[13] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Lack of Capacity

The Sheriff's Department asserts that it "is not a separate legal entity capable of being sued." ECF No. 11-1 at 4.

Under Federal Rule of Civil Procedure 17(b), state law governs whether a governmental agency has the capacity to be sued in federal court. Fed. R. Civ. P. 17(b)(3); *Avery v. Burke,* 660 F.2d 111, 113-14 (4th Cir. 1981) ("The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held."). Under Maryland law, the Sheriff's Department "is not a legal entity capable of being sued." *See Hayat v. Fairely*, CIV WMN-08-3029, 2009 WL 2426011, at *10 (D. Md. Aug. 5, 2009) (*citing Boyer v. State,* 323 Md. 558, 594 A.2d 121, 128 n. 9 (1991)); *see also McGrath-Malott v. Maryland*, CIV A RDB-06-879, 2007 WL 609909, at *6 (D. Md. Feb. 23, 2007) (dismissing claims against the Washington County Sheriff's Office for lack of capacity). Accordingly, all claims against the Sheriff's Department must be dismissed with prejudice.

C. Eleventh Amendment Immunity

1. State of Maryland

9

The State of Maryland seeks dismissal on the basis of
immunity. *See* ECF No. 11-1 at 5. Under the Eleventh
Amendment,[14] "a State cannot be sued directly in its own name
regardless of the relief sought," unless the State consents.
*Ballenger v. Owens*, 352 F.3d 842, 844 (4th Cir. 2003) (*quoting
Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87
L.Ed.2d 114 (1985) (internal quotations omitted)); *Pennhurst
State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S. Ct.
900, 79 L.Ed.2d 67 (1984). Although the State of Maryland has
waived its sovereign immunity for certain types of cases brought
in State courts, *see* Md. Code Ann., State Gov't, § 12-104, it
has not waived its Eleventh Amendment immunity from suit in
federal court, *see Dixon v. Baltimore City Police Dep't*, 345 F.
Supp. 2d 512, 513 (D. Md. 2003) *aff'd,* 88 F. App'x 610 (4th Cir.
2004). All claims against the State of Maryland must be
dismissed with prejudice.

2. State Officers (Official Capacity)

Joseph also sues State's Attorney Twigg, and Deputy Sheriff
Sibley, in their individual and official capacities, for such
injunctive or declaratory relief "as this court may deem just

---

[14] The Eleventh Amendment provides that "[t]he Judicial power of
the United States shall not be construed to extend to any suit
in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or
Subjects of any Foreign State." U.S. Const. amend. XI.

10

and proper" and money damages. *See* ECF No. 1 at 1, 8. Twigg and Sibley assert that they are state officers and thus immune from suit in their official capacities under the Eleventh Amendment. *See* ECF Nos. 11-1 at 6-15, 27-1 at 2-3.

In some circumstances, the Eleventh Amendment bars suits against a state official in his official capacity. If the action is essentially to recover money from the state, the official may invoke Eleventh Amendment immunity because the state is the real party in interest.[15] However, the state official is subject to liability if the plaintiff: seeks to enjoin the official from engaging in unconstitutional conduct, alleges that the official's violation is ongoing, and requests only prospective relief.[16]

### a. Injunctive Relief

Construing Joseph's *pro se* complaint liberally,[17] in one paragraph he apparently attempts to allege an ongoing

---

[15] *Pennhurst,* 465 U.S. at 101; *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70-71, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989); *Nivens v. Gilchrist,* 444 F.3d 237, 249 (4th Cir. 2006).

[16] *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir. 2002) (*citing Ex parte Young,* 209 U.S. 123, 159, 28 S. Ct. 441, 52 L.Ed. 714 (1908)); *Republic of Para. v. Allen,* 134 F.3d 622, 627 (4th Cir. 1998) (*citing, inter alia, Edelman v. Jordan,* 415 U.S. 651, 666-67, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974)).

[17] *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however

constitutional violation ("a continued pattern of practice")
related to his traffic stop, as evidenced by the rest of the
complaint. *See supra* note 9. However, as the complaint only
describes isolated incidents--the traffic stop, the strip
search, the denial of access to the library--it is unclear what,
if any, constitutional violation is allegedly "ongoing."[18]
Accordingly, to the extent that Joseph seeks injunctive relief
against Twigg and Sibley by asserting a continuing violation of
federal law, his claims will be dismissed without prejudice.[19]

---

inartfully pleaded, must be held to less stringent standards
than formal pleadings drafted by lawyers." (internal quotations
and citations omitted)).

[18] The obligation to construe *pro se* complaints liberally "does
not require [district] courts to conjure up questions never
squarely presented to them." *Beaudett v. City of Hampton*, 775
F.2d 1274, 1278 (4th Cir. 1985).

[19] When Joseph has unsuccessfully attempted to allege facts
sufficient to state a claim for relief, the Court will dismiss
his claims without prejudice with leave to amend his complaint
within 21 days of the entry of the Order accompanying this
Opinion. Although Joseph has not requested leave to amend, "the
Fourth Circuit has stated that a court should consider granting
plaintiffs, particularly *pro se* plaintiffs, leave to amend if it
dismisses a complaint based on Fed. R. Civ. P. 12(b)(6)." *See
Smith v. Commonwealth of Virginia*, CIV.A. 3:08CV800, 2009 WL
2175759, at \*9 (E.D. Va. July 16, 2009) *aff'd sub nom. Smith v.
Virginia*, 353 F. App'x 790 (4th Cir. 2009); *see also Anderson v.
Daley*, CIV.A. 00-109-A, 2000 WL 34541008, at \*4 (E.D. Va. Apr.
12, 2000) *aff'd sub nom. Anderson v. U.S. Patent Office*, 24 F.
App'x 103 (4th Cir. 2000) (granting plaintiff leave to amend
complaint as to "those causes of action dismissed without
prejudice due to inadequate pleading"). Federal Rule of Civil
Procedure 15(a)(2) instructs that leave to amend should be
freely given when justice requires, unless the amendment would
prejudice the opposing party, amount to futility, or reward the

### b. Money Damages

Because the Eleventh Amendment bars suits against state officials in their official capacity for money damages, Sibley and Twigg are entitled to immunity if they are "arm[s] of the state." *See Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996). To determine whether a party is an "arm of the state," courts consider four "nonexclusive" factors:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State;
> (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions;
> (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and
> (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.[20]

---

movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008). With respect to Joseph's claims against defendants amenable to suit under § 1983 who are not entitled to summary judgment, granting leave to Joseph to allege additional facts to support his claims is not obviously futile or prejudicial.

Further, dismissal without prejudice in the case of inadequately pled claims against Sibley and the County is particularly appropriate, because the record does not reflect that Joseph was mailed a Rule 12/56 letter promptly after the County and Sibley filed motions to dismiss.

[20] *See Harter*, 101 F.3d at 337 (*citing Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm.*, 822 F.2d 456 (4th Cir.

The first factor is the most important. *Id.*

Under the Fourth Circuit's four factors, Maryland deputy sheriffs are "arms of the state" when acting in a law enforcement capacity and are accordingly immune from suit for damages under the Eleventh Amendment. *See, e.g., Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 649-51 (D. Md. 2004); *Hayat*, 2009 WL 2426011, at *10 (concluding that Sibley was immune from suit). Also, the weight of authority is that Maryland state's attorneys are also state officials entitled to Eleventh Amendment immunity.[21] All claims against Sibley and Twigg in their official capacities for damages will be dismissed with prejudice.

D. Prosecutorial Immunity

Although Joseph does not refer to Twigg by name or title in his allegations, presumably his § 1983 claims against Twigg are

---

1987)); *United States ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012).

[21] *See, e.g., Muhammed v. Bernstein*, CIV.A. RDB-12-1444, 2013 WL 3177864, at *5 (D. Md. June 21, 2013) (concluding that state's attorneys are state officials by virtue of their status under Maryland law); *Crouch v. City of Hyattsville*, CIV.A. DKC 09-2544, 2010 WL 3653345, at *6 (D. Md. Sept. 15, 2010); *Doe v. Mayor & City Council of Pocomoke City*, 745 F. Supp. 1137, 1140 (D. Md. 1990); *but see Lowery v. Prince George's Cnty., Md.*, 960 F. Supp. 952, 956 (D. Md. 1997) (declining to decide whether Maryland state's attorneys are arms of the state because the court lacked sufficient facts to determine which entity would be responsible for satisfying a judgment against them).

14

rooted in the alleged delay in his prosecution, which violated his right to a speedy trial, and delay in dismissal of the Maryland drug charges. *See* ECF No. 1 ¶¶ 11-12, 14, 16. Twigg contends that he is immune from Joseph's claims against him in his individual capacity, because of absolute prosecutorial immunity. *See* ECF No. 11-1 at 17-18.

Maryland's state's attorneys have prosecutorial immunity from civil suits against them in their individual capacities "when performing prosecutorial, as opposed to investigative or administrative, functions." *Hamlett v. Baltimore City Circuit Court*, CIV.A. CCB-13-1203, 2013 WL 2300951, at *1 n.2 (D. Md. May 22, 2013) (*citing Imbler v. Pachtman,* 424 U.S. 409 (1976)); *Nivens*, 444 F.3d at 250; *Fishback v. Maryland*, CIV.A. JFM-12-927, 2012 WL 1145034, at *4 (D. Md. Apr. 4, 2012) *aff'd,* 486 F. App'x 387 (4th Cir. 2012). Decisions about bringing and dismissing criminal charges are within the prosecutorial function.[22] Accordingly, Joseph's claims against Twigg in his individual capacity will be dismissed with prejudice.

E. Section 1985(3) Claim

---

[22] *See, e.g., Imbler*, 424 U.S. at 431 n.33; *Springmen v. Williams*, 122 F.3d 211, 212-13 (4th Cir. 1997) ("The doctrine of absolute immunity squarely covers a prosecutor's decision to go forward with a prosecution."); *Keeper v. Davis*, 5:08CV143, 2009 WL 2450439, at *6 (N.D.W. Va. Aug. 7, 2009) (prosecutorial immunity extends to speedy trial deprivation claims); *Green v. Gatling*, 3:05-2604-CMCJRM, 2006 WL 1679354, at *3 (D.S.C. June 14, 2006) (prosecutorial immunity shielded offer to dismiss charges in exchange for admitting probable cause for arrest).

To state a § 1985(3) conspiracy claim, a plaintiff must plead:

(1) a conspiracy of two or more persons, (2) who are
motivated by a specific class-based, invidiously
discriminatory animus to (3) deprive the plaintiff of
the equal enjoyment of rights secured by the law to
all, (4) and which results in injury to the plaintiff
as (5) a consequence of an overt act committed by the
defendants in connection with the conspiracy.

*Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995).

Joseph's complaint is conclusionary, alleging only that
there was a conspiracy "designed to punish [him] for exercising
his Fourth Amendment right[s]." *See* ECF No. 1 ¶ 24. He has not
alleged that the conspiracy was motivated by his membership in a
class. *See, e.g., C & H Co. v. Richardson*, 78 F. App'x 894, 902
(4th Cir. 2003). He also has not specified the members of the
conspiracy, or the communications establishing the meeting of
the minds. *See A Soc'y Without A Name v. Virginia*, 655 F.3d
342, 347 (4th Cir. 2011). Joseph's § 1985(3) claim will be
dismissed against all defendants without prejudice.[23]

F. Section 1983 Municipal Liability

Section 1983 provides a remedy against any person who,
acting under color of law, deprives another of constitutional
rights. 42 U.S.C. § 1983. It "is not itself a source of
substantive rights, but merely provides a method for vindicating

---

[23] None of the police defendants' evidence in support of summary
judgment addresses Joseph's conspiracy allegations. *See* ECF
Nos. 34-2, 34-3, 34-4, 42-2.

16

federal rights elsewhere conferred." *Albright v. Oliver,* 510 U.S. 266, 271, 114 S. Ct. 807, 127 L.Ed.2d 114 (1994) (internal quotation marks and citation omitted).

The County contends that Joseph's claims against it must be dismissed, because he does not allege "that the injury complained of was the result of a policy, practice or custom . . . promulgated by Allegany County." *See* ECF No. 26-1 at 4. Similarly, the Police Department asserts that Joseph "provides only bald legal conclusions allegedly describing a single incident of misconduct," which cannot "establish[] a policy or custom." *See* ECF No. 41-1 at 6.

As local government entities, the Police Department and the County are subject to suit under § 1983. *See, e.g.*, *Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) (Baltimore Police Department); *Ihnken v. Gardner*, 927 F. Supp. 2d 227, 235 (D. Md. 2013) (county governments) (*citing Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004)). However, municipalities are not liable for the constitutional violations of their employees merely because they are employees. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir. 1987). Liability may attach, however, when municipal policy or custom inflicts the violations. *Monell,* 436 U.S. at 694, 98 S. Ct. at 2037-38;

17

*Spell,* 824 F.2d at 1385-86. "Municipal policies include formal and informal decisions made by municipal officials authorized to make final decisions."[24] *Castle v. Wolford,* 165 F.3d 17, at *2 (4th Cir. 1998) (table); *Spell,* 824 F.2d at 1387.

Joseph does not allege that the County or the Police Department had a policy or custom which led to a violation of his constitutional rights. *See Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (affirming dismissal of § 1983 claims when "there has been no allegation . . . that the supposedly discriminatory decisions . . . were pursuant to official County custom or policy"). At the end of the complaint, in the context of his § 1985(3) claim, he refers to a "continued pattern of practice" of constitutional violations, but it is unclear what he considers to be the offending practice, and he does not attribute it to the County or the Police Department. *See* ECF No. 1 ¶ 24; *supra* Section II.C.2.a.

---

[24] A policy or custom can arise in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests a deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

18

Further, he does not allege that his injuries resulted from a decision made by an official with final policymaking authority. *See, e.g.*, *Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 782 (M.D.N.C. 2011) (dismissing claims against municipality in part because complaint failed to allege that the involved municipal officials had final policymaking authority). Accordingly, Joseph's claims against the County and the Police Department will be dismissed without prejudice.

For the same reasons, the police defendants contend that Joseph has failed to state a claim for relief against them in their official capacities. ECF Nos. 34-1 at 8-9, 42-1 at 5-6. Suits against officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165-66, 105 S. Ct. at 3105 (*quoting Monell*, 436 U.S. at 690 n.55) (internal quotations omitted); *Kennedy v. Widdowson*, 804 F. Supp. 737, 741 (D. Md. 1992). "[T]hus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *See Graham*, 473 U.S. at 166; *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Joseph has not alleged the existence of any policy or custom of any entity of which the police defendants are agents that led to violations of his constitutional rights. He also has not alleged that the police defendants have final policy-making

authority. Accordingly, Joseph's § 1983 claims against the
police defendants in their official capacities will be dismissed
without prejudice.

G. Section 1983 Individual Liability

The remaining claims are against Sibley and the police
defendants in their individual capacities.

The doctrine of *respondeat superior* does not apply in
§ 1983 actions. *See Monell*, 436 U.S. at 691. To state a claim
of individual liability under § 1983, Joseph must allege that
the defendant was personally involved in the alleged
deprivations or that: (i) he had actual or constructive
knowledge that his staff was engaged in unconstitutional
conduct; (ii) he tacitly authorized the conduct; and (iii) there
was an affirmative causal link between the supervisor's inaction
and the injury suffered by the Plaintiff. *See Shaw v. Stroud,*
13 F.3d 791, 799 (4th Cir. 1994); *Slakan v. Porter,* 737 F.2d
368, 373 (4th Cir. 1984).[25]

Although Joseph's complaint is not entirely clear,
construed liberally, it appears to allege § 1983 violations
arising out three incidents in which, presumably, Sibley and/or
the police defendants personally violated his constitutional

[25] Construed liberally, Joseph's complaint does not allege that
Sibley or the police defendants are liable based on their
supervisory roles. Instead, he apparently alleges that the
defendants' personal conduct violated his constitutional rights.
*See, e.g.*, ECF No. 1 ¶¶ 19-20.

rights: (1) the September 29, 2010 traffic stop of the car in which he was a passenger and the search of the car by a police dog (the "stop"); (2) the strip and body cavity search that day at the police station (the "search"); and (3) denial of access to the law library at the Detention Center (the "library incident"). ECF No. 1 ¶¶ 2, 11-12.

Sibley and the police defendants move to dismiss the claims against them in their individual capacities, arguing that Joseph's allegations fail to state a claim for a constitutional violation and fail to allege their individual involvement in any constitutional violations. *See* ECF Nos. 27-1 at 3-5, 34-1 at 7-8, 42-1 at 2-4. The police defendants also contend that they are entitled to qualified immunity. *See* ECF Nos. 34-1 at 9-10, 42-1 at 6-7.

Under the doctrine of qualified immunity, government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982); *Kwarteng v. Morgan State University,* 128 Fed. App'x. 301 (4th Cir.2005). Thus, a government official will be entitled to immunity for his conduct, unless: (1) he has violated a constitutional right; and

(2) the right is clearly established. *Abney v. Coe,* 493 F.3d 412, 415 (4th Cir. 2007). A right is clearly established if "it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001).

### a. The Stop

Joseph alleges that police officers stopped the car in which he was a passenger. ECF No. 1 ¶ 24. He states, without elaboration, that the "routine" traffic stop was "bogus" and "illegal" and that neither he, nor the driver, received a citation for a traffic violation. *Id.* ¶¶ 2, 15, 24. Joseph also alleges that the officers conducted an "illegal[]" search of the vehicle with a dog. *Id.* ¶ 15.

The Fourth Amendment[26] prohibits unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 8, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). Fourth Amendment reasonableness inquiries are fact-intensive. *See Franklin v. Montgomery County,* DKC-05-0489, 2006 WL 2632298, at *13 (D. Md. Sept. 13, 2006). An officer's subjective motive for conducting a traffic stop is

---

[26]    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

irrelevant if, objectively, he had reasonable suspicion to make the stop. *Whren v. United States,* 517 U.S. 806, 812, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996); *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S. Ct. 417, 136 L.Ed.2d 347 (1996); *United States v. Digiovanni,* 650 F.3d 498, 506 (4th Cir. 2011). If he lacked reasonable suspicion, the stop and any resulting search violate the Fourth Amendment. *See Whren,* 517 U.S. at 811–12. An officer may lawfully make a traffic stop if he observes a violation of traffic laws. *Id.* at 817–18.

In an affidavit attached to his motion for summary judgment, Burt avers that he is a police sergeant employed by the Cumberland Police Department. *See* ECF No. 42-2 at 1. He observed the car in which Joseph was a passenger "turn left on a green light, cutting off an oncoming vehicle." *Id.* Both the driver and Joseph were "acting in a nervous manner," so Burt "called for a K-9 scan of the vehicle." *Id.* The dog "conducted an open air scan of the vehicle, which resulted in a positive alert."[27] *Id.* Burt also "issued the driver a written warning for the traffic violation." *Id.*

---

[27] In an affidavit attached to Kyle's motion for summary judgment, he averred that Joseph "handed another officer a digital scale and two sandwich bags containing a white residue." ECF No. 34-2 at 2. Kyle "field tested the scale and the bags, all of which tested positive for the presence of cocaine." *Id.*

Based on this uncontradicted evidence,[28] the stop of the car and search by the dog did not violate Joseph's Fourth Amendment rights. Burt averred that he stopped the car because he observed it violating the traffic laws; this is constitutional under *Whren*. *See, e.g.*, *United States v. Melendez*, 505 F. App'x 233, 235 (4th Cir. 2013) *cert. denied*, 133 S. Ct. 2875, 186 L. Ed. 2d 924 (2013) (police stop of car that was speeding and had cut off another car during a lane change did not violate the Fourth Amendment). Also, use of a "narcotics-detection dog" to sniff the exterior of a car "during a lawful traffic stop" does not implicate the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838, 160 L. Ed. 2d 842 (2005).[29] Accordingly, the evidence shows that neither the stop nor the search violated Joseph's Fourth Amendment rights. The police defendants will be awarded summary judgment on this claim, and, to the extent that Joseph intended to assert a claim

---

[28] Joseph did not respond to Burt's, Pressman's, and Rumgay's motion to dismiss or for summary judgment. However Joseph was mailed a Rule 12/56 letter after the motion was filed, informing him that if he failed to "file a timely written response, the Court may dismiss the case or enter judgment against [him]." ECF No. 44 at 1.

[29] *See also Digiovanni*, 650 F.3d at 512 (noting that "nervous, evasive behavior" may justify "turn[ing a] routine traffic stop into a drug investigation") (*quoting Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S. Ct. 673, 145 L.Ed.2d 570 (2000) (internal quotations omitted)).

24

against Sibley based on the traffic stop, it is dismissed with
prejudice.

b. The Search and the Library Incident

i. Kyle, Merritt, Sivic, and Burt

Kyle, Merritt, Sivic, and Burt have submitted
uncontradicted affidavits[30] averring that they had no involvement
in arresting Joseph, in transporting him after the arrest, or in
the alleged search at the Police Department. *See* ECF Nos. 34-2,
34-3, 34-4, 42-2. They also aver that they did not know about,
or witness, the alleged search of Joseph at the police
department. *See id.* Further, they aver that they had "no
control over the conditions in the" Detention Center and no
involvement with the law librarian. *See id.* Accordingly, Kyle,
Merritt, Sivic, and Burt will be granted summary judgment on
claims arising from the search of Joseph at the Police
Department and the library incident.

ii. Sibley, Pressman, and Rumgay

There is no evidence in the record that the three remaining
defendants were involved with the search or library incident or
are employed by the Detention Center or the Police Department.
Pressman and Rumgay have not offered any evidence opposing

---

[30] Joseph responded to Kyle's, Merritt's and Sivic's motion to
dismiss or for summary judgment. ECF No. 38. However, he
offers no evidence or argument that contradicts the evidence
they offer.

Joseph's claims; thus there is no basis for summary judgment on these claims.[31] Accordingly, the Court will dismiss without prejudice Joseph's claims against Sibley, Pressman, and Rumgay arising out of these incidents.[32]

III. Conclusion

For the reasons stated above, the defendants' motions will be granted.

_2/4/14_
Date

_William D. Quarles, Jr._
United States District Judge

---

[31] *See, e.g.*, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970) (moving party has "the burden of showing the absence of a genuine issue as to any material fact").

[32] *See, e.g.*, *Ciralsky v. C.I.A.*, 1:10CV911 LMB/JFA, 2010 WL 4724279, at *8 (E.D. Va. Nov. 15, 2010) *aff'd sub nom. Ciralsky v. Tenet*, 459 F. App'x 262 (4th Cir. 2011) (dismissing *Bivens* claims asserted against multiple individuals "jointly and severally," because plaintiff failed "to point to any specific violations of clearly established constitutional rights, by any specific defendants").